**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BULGARI, S.p.A.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendant. | Case No. 26-cv-05967-MKV |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY ELECTRONIC MEANS**

Plaintiff Bulgari, S.p.A. ("Bulgari" or "Plaintiff") submits this Memorandum in support of its *ex parte* application for entry of an order to show cause with a Temporary Restraining Order ("TRO"), including a temporary injunction against Defendant enjoining the manufacture, importation, distribution, offering for sale, and sale of infringing and counterfeit products, a temporary asset restraint, expedited discovery, and service of process by electronic means.

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 2

A. Plaintiff's Trademarks and Products ..... 2

B. Defendant's Unlawful Activities ..... 3

III. ARGUMENT ..... 4

A. Standard for Temporary Restraining Order and Preliminary Injunction ..... 5

B. Plaintiff Will Likely Succeed on the Merits ..... 5

C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ..... 7

D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ..... 8

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ..... 9

A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement ..... 9

B. A TRO Immediately Enjoining Defendant's Unauthorized and Unlawful Use of the BVLGARI Trademarks Is Appropriate ..... 11

C. Preventing the Fraudulent Transfer of Assets Is Appropriate ..... 11

D. Plaintiff is Entitled to Expedited Discovery ..... 12

E. Providing Notice of these Proceedings, as well as Completing Service of Process by E-mail and Electronic Publication, Is Proper ..... 13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ..... 16

VI. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

### CASES

*3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181 (S.D.N.Y. 2020) ........................... 5, 8

*Am. Girl, LLC v. Zembrka*, 118 F.4th 271 (2d Cir. 2024) ........................................................... 5

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) .......................... 10

*Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511 (N.D. Ill. 2020) .................................................. 11

*Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ................................................ 9

*Cengage Learning, Inc. v. Doe 1*,
2018 U.S. Dist. LEXIS 239799 (S.D.N.Y. Jan. 17, 2018)................................................. 5, 8, 12

*Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262 (S.D.N.Y. 2011) .............................. 6

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
2020 U.S. Dist. LEXIS 158008 (N.D. Cal. Aug. 10, 2020)....................................................... 11

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ............................. 10

*EE Holding Grp. LLC v. Zhongxin*,
2026 U.S. Dist. LEXIS 78287 (N.D. Ga. Feb. 6, 2026) ........................................................... 14

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995) ..................... 5

*Fender Musical Instruments Corp. v. Individuals, et al.*,
2026 U.S. Dist. LEXIS 44257 (S.D.N.Y. Feb. 27, 2026)......................................................... 11

*Fox Shiver, LLC v. Individuals*,
2023 U.S. Dist. LEXIS 118387 (S.D.N.Y. Apr. 25, 2023)....................................................... 11

*Foxmind Can. Enters. Ltd. v. Aproat*,
2026 LEXIS 30881 (S.D.N.Y. Feb. 13, 2026)............................................................................ 14

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)................................................... 10, 12

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
826 F.3d 27 (2d Cir. 2016).......................................................................................................... 7

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827 (7th Cir. 2012) ...................... 15

*Hurlock v. Kelsier Ventures*,
2025 U.S. Dist. LEXIS 132936 (S.D.N.Y. June 27, 2025)....................................................... 15

*In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979)....................................................... 4, 10, 11

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
2022 U.S. Dist. LEXIS 154175 (S.D.N.Y. Aug. 26, 2022) .......... 14

*Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co.*,
2019 U.S. Dist. LEXIS 234292 (S.D.N.Y. June 20, 2019) .......... 8

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) .......... 9

*Kravitz v. Deacons*, 587 B.R. 598 (Bankr. S.D.N.Y. 2018) .......... 15

*Lego A/S v. Zuru Inc.*, 2025 U.S. App. LEXIS 32272 (2d Cir. Dec. 10, 2025) .......... 7

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982 (11th Cir. 1995) .......... 10

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
2019 WL 7599931 (S.D.N.Y. May 29, 2019) .......... 10

*Louis Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991) .......... 10

*Lynch v. Mascini Holdings Ltd. (In re Kirwan Offices S.à.r.L.)*,
792 F. App'x 99 (2d Cir. 2019) .......... 15

*Malarkey-Taylor Assocs.*, *Inc. v. Cellular Telecomms. Indus. Ass'n.*,
929 F. Supp. 473 (D.D.C. 1996) .......... 9

*Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012) .......... 12

*Nifty Home Prods. v. Ladynana U.S.*,
2026 U.S. Dist. LEXIS 88972 (W.D. Pa. Apr. 22, 2026) .......... 5

*NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328 (S.D.N.Y. 2014) .......... 8

*Piechowicz v. P'ships, et al.*,
2024 U.S. Dist. LEXIS 176326 (S.D.N.Y. Sept. 24, 2024) .......... 14

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987) .......... 6

*Rathmann Grp. v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989) .......... 16

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
737 F. Supp. 1521 (S.D. Cal. 1990); *aff'd*, 970 F.2d 552 (9th Cir. 1992) .......... 10

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......... 13, 14

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi,*
164 F.4th 164 (2d Cir. 2025). .......... 15

*Sport Dimension, Inc. v. Individuals*,
2026 U.S. Dist. LEXIS 140561 (S.D.N.Y. June 24, 2026) .......... 9, 13

*Virgin Enters. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) .... 6

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) .... 15

*Weili Fang v. Gongsi*, 2021 U.S. Dist. LEXIS 68993 (S.D.N.Y. Apr. 5, 2021) .... 9

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536 (5th Cir. 2023) .... 15

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2nd Cir. 2012) .... 8

**STATUTES**

15 U.S.C. § 1051 .... 4

15 U.S.C. § 1057 .... 6

15 U.S.C. § 1065 .... 6

15 U.S.C. § 1114 .... 6

15 U.S.C. § 1116 .... 7, 9

15 U.S.C. § 1125 .... 6

28 U.S.C. § 1331 .... 4

28 U.S.C. § 1338 .... 4

28 U.S.C. § 1391 .... 4

**RULES**

Fed. R. Civ. P. 26 .... 12

Fed. R. Civ. P. 4 .... 4, 13

Fed. R. Civ. P. 65 .... 4, 5, 8, 15

**TREATIES**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 .... 14

# MEMORANDUM OF LAW

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendant identified on Schedule "A" to the Complaint ("Defendant"). As alleged in Plaintiff's Complaint, Defendant is offering for sale and selling unauthorized and unlicensed products using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Counterfeit BVLGARI Products") through at least the fully interactive, e-commerce store[1] operating under the seller alias (the "Seller Alias").

Defendant runs a sophisticated counterfeiting operation and has targeted sales to United States residents by setting up and operating an e-commerce store using at least the Seller Alias through which United States residents can and do purchase Counterfeit BVLGARI Products. Defendant attempts to avoid and mitigate liability by operating under at least the Seller Alias to conceal both its identity and the full scope of its operations. The e-commerce platform used by Defendant fails to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of Counterfeit BVLGARI Products on their platforms. Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendant's counterfeiting of Bulgari's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit BVLGARI Products on U.S.-facing e-commerce platforms. Defendant's ongoing unlawful activities should be restrained, and Plaintiff

[1] The e-commerce store URL is listed on Schedule A to the Complaint under Online Marketplaces.

respectfully requests that this Court issue *ex parte* a TRO and order Defendant to show cause for why a preliminary injunction should not issue.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks and Products

Bulgari is an internationally recognized manufacturer, distributor and retailer of luxury watches, jewelry and accessories, all of which prominently display its famous, internationally recognized and federally registered trademarks, including BVLGARI and BULGARI (collectively, the "BVLGARI Products"). Declaration of Laurence Morel-Chevillet (the "Morel-Chevillet Decl.") ¶ 7. BVLGARI Products have become enormously popular and even iconic, driven by Bulgari's arduous quality standards and innovative design. *Id*. Among the purchasing public, genuine BVLGARI Products are instantly recognizable as such. *Id*. In the United States and around the world, the BVLGARI brand has come to symbolize high quality, and BVLGARI Products are among the most recognizable watches, jewelry and accessories in the world. *Id*.

Bulgari incorporates a variety of distinctive marks in the design of its various BVLGARI Products. *Id.* ¶ 9. As a result of its longstanding use, Bulgari owns common law trademark rights in its BVLGARI Trademarks. *Id*. Bulgari has also registered its trademarks with the United States Patent and Trademark Office. *Id*. BVLGARI Products typically include at least one of Bulgari's registered trademarks. *Id*. Often, multiple Bulgari marks are displayed on a single product. *Id*. Bulgari uses its trademarks in connection with the marketing of its BVLGARI Products, which are collectively referred to as the "BVLGARI Trademarks." *Id.* True and correct copies of the United States Registration Certificates for the BVLGARI Trademarks are attached to the Morel-Chevillet Decl. as Exhibit 1.

The BVLGARI Trademarks are exclusive to Bulgari and are displayed extensively on BVLGARI Products and in Bulgari's marketing and promotional materials. *Id.* ¶ 11. BVLGARI Products have long been among the most popular luxury watches, jewelry and accessories in the world and have been extensively promoted and advertised at great expense. *Id.* In fact, Bulgari has expended millions of dollars annually in advertising, promoting and marketing featuring the BVLGARI Trademarks. *Id.*

Since at least as early as 1998, Bulgari has operated a website where it promotes and sells genuine BVLGARI Products at us.bulgari.com. *Id.* ¶ 13. Sales of BVLGARI Products via the us.bulgari.com website represent a significant portion of Bulgari's business. *Id.* The us.bulgari.com website features proprietary content, images and designs exclusive to Bulgari. *Id.*

Bulgari has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the BVLGARI Trademarks. *Id.* ¶ 14. As a result, products bearing the BVLGARI Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Bulgari. *Id.* Bulgari is a multi-million-dollar operation, and BVLGARI Products have become among the most popular of their kind in the world. *Id.* The widespread fame, outstanding reputation, and significant goodwill associated with the BVLGARI brand have made the BVLGARI Trademarks invaluable assets of Bulgari. *Id.*

**B. Defendant's Unlawful Activities**

The success of the BVLGARI brand has resulted in significant counterfeiting of Bulgari's trademarks. *Id.* ¶ 15. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Bulgari has identified numerous fully interactive e-

commerce stores, including the store operating under the Seller Alias, offering for sale and selling Counterfeit BVLGARI Products to consumers throughout the United States. *See Id.* ¶ 16. If Defendant provides additional credible information regarding its identity, Plaintiff will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendant's purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the BVLGARI Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of an *ex parte* TRO is appropriate because it would immediately stop the Defendant from benefiting from its wrongful use of the BVLGARI Trademarks and preserve the *status quo* until a hearing can be held.

Civil actions against counterfeiters by brand owners present special challenges that justify proceeding on an *ex parte* basis. In the absence of an *ex parte* TRO, the Defendant can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts, outside the jurisdiction of this Court, frustrating any potential recovery and "render[ing] fruitless the further prosecution of the action." *In re Vuitton et Fils, S.A.*, 606 F.2d 1, 5 (2d Cir. 1979). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. Personal jurisdiction is proper over Defendant pursuant to Fed. R. Civ. P. 4(k)(2) because Defendant has structured its business to

target the United States market by accepting payment from and agreeing to ship Counterfeit BVLGARI Products to residents of the United States, and regularly transacting business in the United States. [1] ¶¶ 2, 21, 28-29. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276-79 (2d Cir. 2024); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 87 (S.D.N.Y. 1995) ("transacting business in the United States" satisfies minimum contacts); *Nifty Home Prods. v. Ladynana U.S.*, 2026 U.S. Dist. LEXIS 88972, at *9 (W.D. Pa. Apr. 22, 2026).

### A. Standard for Temporary Restraining Order and Preliminary Injunction

"In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and [TROs]." *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). "To obtain either, [the movant] must show: '(1) a likelihood of success on the merits [. . .]; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.'" *Id.*

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1*, 2018 U.S. Dist. LEXIS 239799, at *4 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

### B. Plaintiff Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to

cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim under both 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) has two elements. *Virgin Enters. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003). First, a plaintiff must show that its "mark is entitled to protection." *Id.* Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, the BVLGARI Trademarks are distinctive and are registered with the United States Patent and Trademark Office. *See* Morel-Chevillet Decl. ¶¶ 9-12. The registrations for the BVLGARI Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* ¶ 10. The registrations for the BVLGARI Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the BVLGARI Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendant to use any of the BVLGARI Trademarks, and Defendant is not an authorized retailer of genuine BVLGARI Products. *Id.* ¶ 18. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

"Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267 (S.D.N.Y. 2011) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the BVLGARI Trademarks. The result is the same when considered in light of the Second Circuit's eight enumerated factors to determine whether there is a likelihood of confusion, which include: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by

developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Lego A/S v. Zuru Inc.*, 2025 U.S. App. LEXIS 32272, at *8-9 (2d Cir. Dec. 10, 2025).

Plaintiff has submitted documentation showing that Defendant is selling Counterfeit BVLGARI Products that look similar to genuine BVLGARI Products and use infringing and counterfeit marks identical to the BVLGARI Trademarks. Ex. 2, Morel-Chevillet Decl. As a result of Plaintiff's efforts, the BVLGARI Trademarks have achieved tremendous fame and recognition. *See* Morel-Chevillet Decl. ¶ 12. Both Plaintiff and Defendant advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine BVLGARI Products. *See id.* ¶¶ 13, 17. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine BVLGARI Products from Counterfeit BVLGARI Products. Indeed, it appears that Defendant is intentionally trying to induce consumers looking for genuine BVLGARI Products to purchase Counterfeit BVLGARI Products instead. *See id.* ¶¶ 18-19. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 44 (2d Cir. 2016). Accordingly, the relevant factors heavily weigh in Plaintiff's favor. As such, Plaintiff is likely to establish a *prima facie* case of trademark infringement.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Even without the presumption of irreparable harm, however, Plaintiff can easily satisfy this factor. Defendant's unauthorized use of the BVLGARI Trademarks has and continues to irreparably harm Plaintiff through diminished

goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Morel-Chevillet Decl. ¶¶ 26-30. *See Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co.*, 2019 U.S. Dist. LEXIS 234292, at *9 (S.D.N.Y. June 20, 2019) ("diminished goodwill and brand confidence, damage to [plaintiff's] reputation," "loss of future sales[,] and loss of exclusive use" are sufficient to establish irreparable harm). The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 341-42 (S.D.N.Y. 2014). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Morel-Chevillet Decl. ¶ 31.

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Cengage Learning*, 2018 U.S. Dist. LEXIS 239799, at *4. As a willful infringer, Defendant is entitled to little equitable consideration. *See 3M Co.*, 458 F. Supp. 3d at 197; *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2nd Cir. 2012) ("an infringer [. . .] cannot complain about the loss of ability to offer its infringing product").

As Plaintiff has demonstrated, Defendant has been profiting from the sale of Counterfeit BVLGARI Products. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed*

*Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "one who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement on the plaintiff's trademark." *Malarkey-Taylor Assocs.*, *Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996). Thus, the balance of equities tips decisively in Plaintiff's favor.

Further, the public is currently under the false impression that Defendant is operating its e-commerce store with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. As such, equity requires that Defendant be ordered to cease its unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

Here, Defendant is engaged in the inherently deceptive act of trademark counterfeiting from outside the U.S. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Sport Dimension, Inc. v. Individuals*, 2026 U.S. Dist. LEXIS 140561, at *16 (S.D.N.Y. June 24, 2026); *Weili Fang v. Gongsi*, 2021 U.S. Dist. LEXIS 68993, at *5 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given

notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, at *2 (S.D.N.Y. May 29, 2019); *Louis Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). This is because providing notice to Defendant would render fruitless the further prosecution of the action. *Vuitton*, 606 F.2d 1, 5.

These challenges are compounded by "the international aspect of the defendants' business" because "unless the assets are frozen, defendants may hide their allegedly ill-gotten funds[,]" frustrating Plaintiff's ability to obtain an accounting. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990); *aff'd*, 970 F.2d 552, 559 (9th Cir. 1992); *see also Gucci Am. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (affirming a preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeits in China).

Plaintiff has submitted evidence showing that Defendant is selling Counterfeit BVLGARI Products and operates from China. *See* Morel-Chevillet Decl. ¶ 16. Defendant "take[s] advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp.*

*v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendant operates offshore in China. Morel-Chevillet Decl. ¶ 16. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendant set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have received notice of a lawsuit. *See* Declaration of Berel Y. Lakovitsky (the "Lakovitsky Decl.") ¶¶ 5-12. Defendant is also likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, 2020 U.S. Dist. LEXIS 158008, at *25 (N.D. Cal. Aug. 10, 2020); *see* Lakovitsky Decl. ¶ 13. It is also proper for the Court to consider and rely upon actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *See Vuitton*, 606 F.2d at 4; *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008, at *10-11.

### B. A TRO Immediately Enjoining Defendant's Unauthorized and Unlawful Use of the BVLGARI Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendant to immediately cease all infringing use of the BVLGARI Trademarks on or in connection with the e-commerce store operating under the Seller Alias. Courts have regularly authorized injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Fox Shiver, LLC v. Individuals, et al.*, 2023 U.S. Dist. LEXIS 118387, at *10 (S.D.N.Y. Apr. 25, 2023); *Fender Musical Instruments Corp. v. Individuals, et al.*, 2026 U.S. Dist. LEXIS 44257, at *4-5 (S.D.N.Y. Feb. 27, 2026).

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* asset restraint of Defendant's assets so that Plaintiff's right to an equitable accounting of Defendant's profits from sales of Counterfeit BVLGARI Products is

not impaired.[2] Plaintiff's Complaint seeks, among other relief, that Defendant accounts for and pays Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts. The Court has the "inherent equitable authority" to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Gucci Am.*, 768 F.3d at 130; *see also Cengage Learning*, 2018 U.S. Dist. LEXIS 239799, at *8-9 ("where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets").

If an asset restraint is not granted, Defendant will likely disregard its responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. On information and belief, the Defendant in this case holds most of its assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendant's activities and that, unless Defendant's assets are frozen, Defendant will likely hide or move its ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiff is Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant such an order." *Cengage Learning*, 2018 U.S. Dist. LEXIS 239799 at *11-12. Furthermore, courts have broad discretion over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

[2] Plaintiff has filed a Motion for Leave to File Under Seal certain documents for this same reason.

Plaintiff requests expedited discovery to learn Defendant's identity, financial accounts used for its operations, and associated sales. The requested expedited discovery is limited to what is necessary to prevent further irreparable harm. Discovery of these financial accounts is necessary to ensure that they can be frozen and Defendant's infringing activities will be contained. Plaintiff's asset restraint may have little meaningful effect without the corresponding expedited discovery. "'[S]uch relief is routinely granted' where, as here, 'a party seeks injunctive relief in a trademark infringement case against unidentified parties.'" *Sport Dimension*, 2026 U.S. Dist. LEXIS 140561, at *17.

### E. Providing Notice of these Proceedings, as well as Completing Service of Process by E-mail and Electronic Publication, Is Proper

Pursuant to Federal Rule of Civil Procedure 4(f)(3) Plaintiff requests authorization to serve process by electronically publishing a link to the Complaint, the proposed Temporary Restraining Order, and other relevant documents on a website, and by sending an e-mail with an attachment of the relevant documents and a link to said website to an e-mail address for Defendant. Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendant receives from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendant of the pendency of the action and afford it the opportunity to present its objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement, as the Court directs, provided such means is reasonably calculated to give notice. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Props.* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Ninth Circuit

reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

i. The Hague Convention Does Not Apply Because Defendant's Address Is Unknown

The United States and the People's Republic of China are both signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, 1969 U.S.T. LEXIS 152 ("Hague Convention"). *See* Lakovitsky Decl. ¶ 14. Article 1 of the Hague Convention states that the Convention does not apply if the address of the person to be served is unknown. *See* Hague Convention, 1969 U.S.T. LEXIS 152, at *16; *see also Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 U.S. Dist. LEXIS 154175, at *17 (S.D.N.Y. Aug. 26, 2022). A defendant's address may be deemed unknown "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Foxmind Can. Enters. Ltd. v. Aproat*, 2026 LEXIS 30881, at *7 (S.D.N.Y. Feb. 13, 2026) (quoting *Kelly Toys Holdings, LLC.*, 2022 U.S. Dist. LEXIS 154175, at *17-18).

Courts have found reasonable diligence where, for example, plaintiffs attempted to "discover a physical address for service of each Defendant located in China by researching the address listed on" their e-commerce stores, and "searching for the address on multiple search engines, including a Chinese service; and searching for potential other addresses of each Defendant on multiple search engines." *Piechowicz v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 176326, at *3 (S.D.N.Y. Sept. 24, 2024); *see also EE Holding Grp. LLC v. Zhongxin*, 2026 U.S. Dist. LEXIS 78287, at *4 (N.D. Ga. Feb. 6, 2026). "No specific set of steps, however, are mandatory." *Kelly Toys Holdings, LLC.*, 2022 U.S. Dist. LEXIS 154175, at *7-8.

Specifically, a search for the address provided for the Defendant was run through Google, Google Maps, and Baidu Maps. *Id.* ¶ 17. Therefore, despite Plaintiff's reasonable diligence to identify and verify Defendant's address, it remains unknown.

ii. Alternatively, Plaintiff Should be Permitted to Provide Notice of a Preliminary Injunction Hearing and Future Motions Electronically

Plaintiff also respectfully requests the Court authorize Plaintiff to provide notice of these proceedings, including notice of the preliminary injunction hearing and all further motions, by electronic publication and e-mail. "'Rule 65(a) does not require service of process,' but requires 'notice to the adverse party.'" *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023); *see also Hurlock v. Kelsier Ventures*, 2025 U.S. Dist. LEXIS 132936, at *5-6 (S.D.N.Y. June 27, 2025) (citing *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012)). As such, the Court can authorize Plaintiff to provide notice of the proceedings, including notice of the preliminary injunction and all future motions, by electronic publication and e-mail. *See Hurlock*, 2025 U.S. Dist. LEXIS 132936, at *5 (finding e-mail "plainly sufficient.").

The Second Circuit's decision in *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi* does not compel a different conclusion. 164 F.4th 164 (2d Cir. 2025). There, the Second Circuit concluded that e-mail service on defendants located in China is prohibited by the Hague Convention. However, the Hague Convention only applies to formal service of process under Rule 4. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988); *Lynch v. Mascini Holdings Ltd. (In re Kirwan Offices S.à.r.L.)*, 792 F. App'x 99, 102 (2d Cir. 2019). In other words, "the Hague Convention only applies to service of process[,]" and "excludes service of judicial documents other than the summons and complaint." *Kravitz v. Deacons*, 587 B.R. 598, 605 (Bankr. S.D.N.Y. 2018).

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and false designation of origin, Plaintiff requests that the Court require Plaintiff to post a bond of no more than one thousand dollars ($1,000).

## VI. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 20th day of July 2026.

Respectfully submitted,

/s/ Berel Y. Lakovitsky
Berel Y. Lakovitsky
N.Y. Bar No. 6224323
Greer, Burns & Crain, Ltd.
90 Broad Street 2nd Floor
New York, NY 10004
312.374.8676 / 312.360.9315 (facsimile)
blakovitsky@gbc.law

*Counsel for Plaintiff Bulgari, S.p.A.*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

I hereby certify that this document complies with the word-count limit provided for in Local Rule 7.1. Excluding parts excepted by Local Rule 7.1(c), this document contains approximately 4,742 words.

Dated this 20th day of July 2026.

Respectfully submitted,

/s/ Berel Y. Lakovitsky
Berel Y. Lakovitsky
N.Y. Bar No. 6224323
Greer, Burns & Crain, Ltd.
90 Broad Street 2nd Floor
New York, NY 10004
312.374.8676 / 312.360.9315 (facsimile)
blakovitsky@gbc.law

*Counsel for Plaintiff Bulgari, S.p.A.*